UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
JAN 1 0 2001
MICHAEL W. DOBBINS, CLERK
UNITED STATES DISTRICT COURT

UNITED STATES OF AMERICA )
) No. _____
v. ) Violations: Title 18,
) United States Code, Sections
JAMES PARKS, ) 2, 1951, and 1962(d)
WILLIE PARKER, and JAN 1 7 2001 )
MARSHALL THOMPSON )

DOCKETED

**01CR0035**

**COUNT ONE**

The SPECIAL JULY 2000-2 GRAND JURY charges:  JUDGE SHADUR

**Background**

1. At times material to this indictment  MAGISTRATE JUDGE DENLOW

   a. Under Illinois law, a park district was a governmental body that possessed certain powers, including the power to establish and maintain a police force.

   b. The Dixmoor Park District was a park district in Cook County, Illinois. The Dixmoor Park District maintained a police force known as the Dixmoor Park District Police Department ("DPDPD").

   c. Under Illinois law, an officer in a park district police force such as DPDPD was required to act as a conservator of the peace within and upon the parks and property controlled by that park district and was authorized to make arrests for criminal offenses in the same manner as police officers in cities within Illinois.

   d. The Dixmoor Park District controlled a single park - a "tot lot" in Dixmoor, Illinois that covered an area roughly the size of one-quarter block and contained a few items of playground equipment.

e. The Maywood Park District was a park district in Cook County, Illinois. The Maywood Park District maintained a police force known as the Maywood Park District Police Department ("MPDPD"). One section within MPDPD was referred to as the "support group." The MPDPD support group, which consisted of approximately five MPDPD police officers, purportedly was responsible for raising money for MPDPD.

### The Enterprise

2. At times material to this indictment:

a. DPDPD was an "enterprise," as that term is defined in Title 18, United States Code, Section 1961(4), which was engaged in, and the activities of which affected, interstate commerce. DPDPD conducted meetings at St. Mark's Church in Harvey, Illinois, and at Mr. G's, a nightclub in Chicago, Illinois. As of on or about May 17, 1995, DPDPD consisted of approximately 11 part-time police officers.

b. Before on or about May 18, 1995, defendant JAMES PARKS was a police officer with MPDPD. On or about May 18, 1995, defendant PARKS was appointed Commissioner or Superintendent of DPDPD, and shortly thereafter, defendant PARKS became Chief of DPDPD. Upon his appointment, defendant PARKS ordered the original 11 DPDPD police officers, including the officer who was then Chief of DPDPD, to surrender their badges and credentials, and advised these officers that he would determine who among them would be permitted to continue with DPDPD. From on or about May 18, 1995, through the remainder of defendant PARKS's tenure at DPDPD, in

-2-

excess of approximately 80 additional persons were hired as DPDPD police officers.

   c.   Defendant WILLIE PARKER was a DPDPD police officer and held the rank of Sergeant. Before joining DPDPD, defendant PARKER was a police officer with MPDPD.

   d.   Defendant MARSHALL THOMPSON was an MPDPD police officer and held the rank of Sergeant. Defendant THOMPSON was in charge of MPDPD's support group.

   e.   Lee Owens, now deceased, was a DPDPD police officer and held the rank of Lieutenant. Before joining DPDPD, Owens was an MPDPD police officer.

### The Racketeering Violations

   3.   Beginning on a date unknown to the Grand Jury, but not later than on or about May 18, 1995, and continuing until on or about March 21, 1996, in the Northern District of Illinois, Eastern Division,

> JAMES PARKS,
> WILLIE PARKER, and
> MARSHALL THOMPSON,

defendants herein, together with Lee Owens and other persons known and unknown to the Grand Jury, being persons employed by and associated with an enterprise which engaged in, and the activities of which affected, interstate commerce, namely, DPDPD, knowingly and intentionally conspired with each other to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity

-3-

consisting of multiple acts involving bribery, in violation of 720 Illinois Compiled Statutes 5/33-1, and official misconduct, in violation of 720 Illinois Compiled Statutes 5/33-3. It was part of the conspiracy that the defendants agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

**Methods and Means of the Racketeering Conspiracy**

4. It was part of the conspiracy that defendant JAMES PARKS, defendant WILLIE PARKER, defendant MARSHALL THOMPSON, and Lee Owens solicited bribe payments from prospective DPDPD police officers, representing to these prospective officers that in exchange for the requested bribes, they would be hired as full-fledged DPDPD police officers.

5. It was further part of the conspiracy that defendant JAMES PARKS requested and obtained the assistance of defendant MARSHALL THOMPSON and defendant WILLIE PARKER in establishing and maintaining a "support group" at DPDPD. The purported purpose of this support group, like that of the MPDPD support group, was to raise money for police cars and other department costs and expenses. In reality, the DPDPD support group was to function as a means by which the defendants could obtain bribes from prospective DPDPD police officers.

6. It was further part of the conspiracy that for purposes of soliciting bribes from prospective DPDPD police officers, defendant JAMES PARKS, defendant WILLIE PARKER, defendant MARSHALL THOMPSON, and Lee Owens targeted and recruited, among other

-4-

persons, businessmen who had little or no desire to perform traditional police duties but instead wanted to possess and exercise certain powers associated with law enforcement authorities, such as lawfully carrying a concealed gun, being able to display police badges and credentials, parking in restricted areas, and receiving discounts for goods and services. Included among those persons whom the defendants targeted and solicited were persons who previously had paid money to defendant PARKER in order to become MPDPD police officers but who had not been permitted to join MPDPD.

7. It was further part of the conspiracy that defendant WILLIE PARKER, defendant MARSHALL THOMPSON, and Lee Owens, accepted bribes from a number of prospective DPDPD police officers who understood that in exchange for their bribes, they would be hired as full-fledged DPDPD police officers. Those prospective officers who had previously paid to become, but who had not been made, MPDPD police officers were credited with their previous payments - that is, the previous payments were applied to the bribe amounts that these prospective officers were required to pay in order to become DPDPD police officers. The bribes that the defendants accepted from prospective DPDPD police officers ranged from approximately $1,000 to approximately $2,500.

8. It was further part of the conspiracy that having obtained the bribes described in the preceding paragraph, defendant WILLIE PARKER, defendant MARSHALL THOMPSON, and Lee Owens gave the bribe money to defendant JAMES PARKS, who, in turn, hired, or

caused to be hired, certain of the prospective DPDPD police officers as full-fledged DPDPD police officers.

9. It was further part of the conspiracy that defendant JAMES PARKS conducted department meetings during which he attempted to intimidate DPDPD police officers so as to prevent them from discussing certain department affairs amongst themselves or with persons not affiliated with the department. In this regard, defendant PARKS, among other things, instructed DPDPD police officers not to discuss allegations that department members were selling DPDPD badges and threatened that those officers who did discuss these allegations would be suspended or subject to other disciplinary action.

10. It was further part of the conspiracy that defendant WILLIE PARKER, on behalf of defendant JAMES PARKS, solicited bribes from DPDPD police officers who had been suspended, representing to these officers that in exchange for the requested bribes, they would be reinstated on the force. For purposes of soliciting these bribes, defendant PARKER told suspended officers that they could have their suspensions lifted by "taking the Chief to dinner" - that is, by paying a bribe to defendant PARKS. Defendant PARKER obtained cash bribes from several of the suspended officers and gave this bribe money to defendant PARKS, who, in turn, reinstated, or caused to be reinstated, certain of these officers. These bribes were approximately $200 each.

11. It was further part of the conspiracy that defendant JAMES PARKS oversaw DPDPD fund-raising events and instructed DPDPD

police officers to sell or purchase themselves an allotment of tickets to those events. Defendant PARKS advised DPDPD officers that those officers who failed to sell or purchase their allotment of tickets might not be permitted to maintain their positions with the department. Additionally, in or about December 1995 or early January 1996, defendant PARKS suspended, or caused the suspension of, a DPDPD officer ("Individual A") who had not sold or purchased his allotment of tickets to a particular department fund-raiser. In or about January 1996, defendant PARKS informed defendant MARSHALL THOMPSON, who was related to Individual A, of Individual A's suspension. Defendant THOMPSON thereafter met defendant PARKS at a hotdog stand in or near Midlothian, Illinois for the purpose of paying defendant PARKS a sum of money that was to cover, among other things, the cost of Individual A's tickets. Defendant PARKS accepted this payment and in or about late January or early February 1996, reinstated, or caused the reinstatement of, Individual A at DPDPD.

12. It was further part of the conspiracy that defendant JAMES PARKS, defendant WILLIE PARKER, defendant MARSHALL THOMPSON, and Lee Owens misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, the true purposes of the acts done in furtherance of the conspiracy.

All in violation of Title 18, United States Code, Section 1962(d).

## COUNT TWO

The SPECIAL JULY 2000-2 GRAND JURY further charges:

1. The Grand Jury realleges and incorporates by reference paragraphs One and Two (subparagraphs b through e) of Count One of this indictment as though fully set forth herein.

2. Beginning on a date unknown to the Grand Jury, but not later than on or about May 18, 1995, and continuing until on or about March 21, 1996, in the Northern District of Illinois, Eastern Division,

JAMES PARKS,
WILLIE PARKER, and
MARSHALL THOMPSON,

defendants herein, together with Lee Owens and other persons known and unknown to the Grand Jury, did conspire to commit extortion, which extortion obstructed, delayed, and affected commerce, and which conspiracy consisted, in summary, of an agreement that the defendants would solicit and obtain property, namely, payments of money, from prospective and suspended DPDPD police officers, with the consent of these individuals induced under color of official right.

All in violation of Title 18, United States Code, Sections 1951 and 2.

A TRUE BILL:

_____
FOREPERSON

_____
UNITED STATES ATTORNEY

No.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

vs.

JAMES PARKS, WILLIE PARKER and MARSHALL THOMPSON

Violations: 18 U.S.C. § 1962(d)
18 U.S.C. § 1951

**INDICTMENT**

A true bill,

_____
Foreman

Filed in open court this _____ day of _____ A.D. 20____

_____
Clerk

Bail, $ _____